1  MELODY A. KRAMER, SBN 169984
2  9930 Mesa Rim Road, Suite 1600
   San Diego, California 92121
3  Telephone (858) 362-3150
   Email: mak@kramerlawip.com
4

5  J. MICHAEL KALER, SBN 158296
   9930 Mesa Rim Road, Suite 200
6  San Diego, California 92121
7  Telephone (858) 362-3151
   Email: michael@kalerlaw.com
8

9  Attorneys for Plaintiff JENS ERIK SORENSEN,
   as Trustee of SORENSEN RESEARCH AND
10 DEVELOPMENT TRUST

11              UNITED STATES DISTRICT COURT

12         FOR THE SOUTHERN DISTRICT OF CALIFORNIA

13

14 JENS ERIK SORENSEN, as Trustee of    ) Case No. 08 CV 134 BTM CAB
   SORENSEN RESEARCH AND               )
15 DEVELOPMENT TRUST,                  ) **DECLARATION OF MELODY A.**
                                       ) **KRAMER OPPOSITION TO**
16                                     ) **DEFENDANTS' MOTION TO STAY**
                         Plaintiff,    ) **PENDING OUTCOME OF**
17    v.                               ) **REEXAMINATION PROCEEDINGS**
18                                     )
                                       )
19 INFORMATICS, INC., a Texas          ) Date: June 6, 2008
20 Corporation; INFORMATICS            ) Time: 11:00 a.m.
   HOLDINGS, INC., a Delaware          ) Courtroom 15 – 5th Floor
21 Corporation; DATALOGIC SCANNING,    ) The Hon. Barry T. Moskowitz
22 INC., a Delaware Corporation;       )
   DATALOGIC SCANNING HOLDINGS,        ) *NO ORAL ARGUMENT*
23 INC., a New York Corporation; and   ) *UNLESS REQUESTED BY THE COURT*
24 DOES 1 – 100,                       )
                                       )
25                                     )
                                       )
26 _____    )

27

28

1    I, MELODY A. KRAMER, declare:

2    1.    I am not a party to the present action.  I am over the age of eighteen.  I

3    have personal knowledge of the facts contained within the following paragraphs, and

4    could and would competently testify thereto if called as a witness in a court of law.

5    2.    At all times relevant herein I have been an attorney for Sorensen

6    Research and Development Trust ("SRDT"), Plaintiff in the above-captioned matter.

7    3.    This declaration is made in support of Plaintiff's Opposition to

8    Defendants' Motion to Stay.

9    4.    Patent infringement defendant Black & Decker filed an Ex Parte

10    Request for Reexamination of the subject '184 patent in July 2007 ("1st

11    reexamination") and, on that basis, obtained an order staying the related case,

12    *Sorensen v. Black & Decker Corporation, et al*, Case No. 06cv1572 ("Black &

13    Decker Order").   Now, nine months later, the first office action for the 1st

14    reexamination has not yet issued, even though Plaintiff declined to file the optional

15    patent owner's statement in order to shave approximately two months from the

16    process.

17    5.    Co-defendants in the *Black & Decker* case - Phillips Plastics and Hi-

18    Tech Plastics – waited until December 21, 2007 to file a second third-party

19    reexamination request ("2nd reexamination"), which the USPTO has just recently

20    accepted.

21    6.    Recently, I have accessed and analyzed annual of reports and conducted

22    a closer analysis of USPTO data show that the current, average timeframe for

23    conclusion of a reexamination is approximately five years, extending longer if an

24    appeal to the Federal Circuit is sought.  That closer analysis shows that the 18-23

25    month period most recently cited by Defendants and the PTO as typical for

26    reexamination completion is an average of all reexaminations filed in the 28 years

27    since 1981.  When one eliminates the older data and conducts the analysis only on

28    reexamination filings in more recent years, it becomes apparent that the phenomenal

2.

Case No. 08CV134 BTM CAB

growth in reexamination filings since 2002 vastly exceeds the PTO's current pace for processing reexaminations.   As a natural consequence, the backlog of pending reexaminations has grown to approximately a five-year supply and application growth continues to outpace all efforts by the PTO to accommodate the increased workload.  This data leads to the conclusion that the current, average timeframe for completion of a reexamination filed after 2006 is approximately five years and continuing to grow.  The details of my analysis are as follows.

7.    USPTO Annual Reports contain statistics on the number of *ex parte* reexamination filings, the number of those that are known to be related to litigation, the number of *ex parte* reexaminations granted, and the total number of certificates issued.  The official website contains annual reports back to 1993 which contain this statistical data back to 1989.  Because each report includes data for a five-year period of time, attached hereto are true and correct copies of only the relevant portions of the reports for 2007, 2002, 1998, and 1993.  These are attached herein as Exhibit A.

8.    I imported the statistics noted above into an Excel spreadsheet and then made observations and calculations of that data.  The Excel spreadsheet is attached hereto as Exhibit B, followed by a Growth of Reexamination Backlog Graph prepared from that data.  By comparing the incoming reexamination filings vs. the outgoing certificates, a pattern of dramatically increasing backlog appears. Assuming a zero carryover from 1988 into the 1989 figures for which records are available, the backload of ex parte reexaminations has increased more than 100-fold from 1989 to the end of 2007 (from 16 to an estimated 1,658).

9.    If the USPTO were able to keep issuing certificates at its 2007 level of 367 (the highest reported number in a single year) and not have any new filings, it would still take approximately 4.5 years for the USPTO to erase the backload of *ex parte* reexaminations (1,658 ÷ 367).

1         10.    If the rate of certificate issuances were 250, the average for the past five

2   years ((193+138+223+329+367)/5), it would take 6.6 years to erase the backlog

3   (1,658 ÷ 250).

4         11.    The filing of reexaminations has become an effective weapon to slow

5   down or stop patent infringement plaintiffs.  This is not only demonstrated by

6   numerous articles recommending this strategy to infringement defendants (see

7   Exhibit D for example), but it is also demonstrated by the USPTO's own

8   information.

9         12.    *Ex parte* reexamination requests known to be related to litigation have

10  soared from a mere 9% in 1990 to 57% for 2007.  See Exhibit B.

11        13.    The PTO was already commenting on problems keeping pace with these

12  increased litigation related filings in 2004, even though the estimated backlog was

13  still less than 800 at the end of 2003.  In early 2005, the USPTO issued a "Notice of

14  Changes in Requirement" document (attached hereto as Exhibit C), which contains

15  the following statement in the Background section:

16  
17      It has been the Office's experience, however, that both patent owners
        and third party requesters have used a second or subsequent
18      reexamination request . . . to prolong the reexamination proceeding, and
        in some instances, to turn it essentially into an <u>inter partes</u> proceeding.
19      These actions by patent owners and third party requesters have resulted
        in multiple reexaminations taking years to conclude, thus making it
20      extremely difficult for the Office to conclude reexamination
        proceedings with "special dispatch" as required by statute (35 U.S.C.
21      305 for <u>ex parte</u> reexamination, 35 U.S.C. 314 <u>inter partes</u>
22      reexamination).

23        14.    In late 2006, this Court adopted and implemented a set of Patent Local

24  Rules with the stated purpose of providing a predictable and uniform treatment for IP

25  litigants and streamline the process by which a patent case is litigated, shortening the

26  time to trial or settlement and thereby reducing costs for all parties involved.  The

27  new rules set up a schedule where a claim construction hearing would be held

28  

Case No. 08CV134 BTM CAB

1    approximately nine months after the complaint is filed, and trials set at

2    approximately 18 months after complaints are filed.

3        15.    Attached hereto as Exhibit E is a true and correct copy of an article

4    entitled "New local rules pave way to speedier patent trials" from the San Diego

5    Daily Transcript dated June 12, 2007.  In it (at the 7th paragraph) Judge Dana M.

6    Sabraw, who chaired the committee that established the new patent local rules, is

7    quoted as saying: "A majority of the judges of the Southern District are firmly

8    committed to holding claim construction hearings within nine months for the filing

9    of the complaint, and to setting a trial date within 18 months of that filing."

10        16.    The closer analysis of USPTO data that is explained herein was

11    prompted by information obtained directly from or related to counsel for the Black &

12    Decker defendants, the origin of the derailing of the '184 litigation.  The February

13    2008 issue of the San Diego Intellectual Property Lawyers Association ("SDIPLA")

14    contained a reference to a newsletter from Hal Wegner, partner at Foley & Lardner,

15    the law firm representing Black & Decker case defendants Phillips Plastics and Hi-

16    Tech Plastics.  The reference states as follows:

17        The 1/5/08 email [from Hal Wegner] states that today the average ex

18        parte reexamination takes about 5 years (vs. the PTO's claim that it
    takes 2 years).  If an appeal to the CAFC is involved, that extends the

19        period to 7.7 years.

20

21        17.    I attempted to get a copy of the underlying email from Mr. Wegner

22    directly, however, Mr. Wegner responded that he did not keep copies of such emails.

23        18.    The fact of lengthy reexaminations is also well-known to the Niro

24    Scavone firm that represents Black & Decker.  The oft-reported U.S. Patent No.

25    5,253,341 "JPEG patent," owned by a client of Niro Scavone, emerged from a seven-

26    year reexamination just days prior to the filing of Black & Decker's reexamination

27    request of the '184 patent.  A new reexamination has just been allowed of that very

28    same JPEG patent, and corresponding motions for stay were filed in the '341

5.

1  litigation that had been on hold for seven years.  A true and correct copy of Niro

2  Scavone's brief on the issue is attached hereto as Exhibit F.

3

4  DATED this Friday, May 09, 2008.

5

6                                    /s/ Melody A. Kramer
                                     Melody A. Kramer, Esq.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 08CV134 BTM CAB

1

## TABLE OF EXHIBITS

2

3    Exhibit A ..............................................................................................................7

4    Exhibit B ............................................................................................................18

5    Exhibit C ...........................................................................................................20

6    Exhibit D ...........................................................................................................23

7    Exhibit E ............................................................................................................27

8    Exhibit F ............................................................................................................29

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 08CV134 BTM CAB